839 F.2d 1333
 127 L.R.R.M. (BNA) 2891, 56 USLW 2491,
108 Lab.Cas. P 10,397,
9 Employee Benefits Ca 1649
 The BRICK MASONS PENSION TRUST; The Brick Masons Health and
Welfare Trust; The Brick Masons Apprenticeship Trust; The
Brick Masons Vacation Trust; and The Brick Masons Promotion
Trust, Plaintiffs/Appellants, Cross-Appellees,
v.
INDUSTRIAL FENCE & SUPPLY, INC.; Harris Building & Supply,
Inc., doing business as Harris Fence Co.,
Defendants/Appellees, Cross-Appellants.
 Nos. 85-5803, 85-5812 and 85-5821.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Sept. 10, 1987.
Decided Feb. 16, 1988.
 
 Wallace Knox and Shelley Kaufman, Karp & Mooney, Los Angeles, Cal., for plaintiffs/appellants, cross-appellees.
 John H. Stephens, Cox, Castle & Nicholson, Barton W. Robertson, Tyre Kamins Katz & Granof, Los Angeles, Cal., for defendants/appellees, cross-appellants.
 Appeal from the United States District Court for the Central District of California.
 Before GOODWIN, NELSON and NORRIS, Circuit Judges.
 NORRIS, Circuit Judge:
 
 
 1
 Industrial Fence & Supply, Inc. ("Industrial") and Harris Building & Supply, Inc. ("Harris") are wholly owned subsidiaries of the same parent company. Both are engaged in the business of building block walls. Industrial has a collective bargaining agreement with Local 2 of the Bricklayers, Masons, and Plasterers International Union of America which obligates Industrial to make contributions to various Bricklayers Union fringe benefit trust funds ("the Trust Funds") based upon hours worked by Industrial brick masons. Harris is non-union.
 
 
 2
 In this action, the Trust Funds seek to recover contributions for hours worked by Harris brick masons. The Trust Funds' primary theory at trial was that all Harris brick masons are covered by Industrial's collective bargaining agreement because Harris was the alter ego of Industrial and therefore was bound by Industrial's collective bargaining agreement. After a bench trial, the district court rejected this theory, finding that although the two companies were closely related, their operations were sufficiently separate to preserve their status as independent entities. The Trust Funds' secondary theory of liability was built upon evidence that certain Harris masons had performed work on Industrial jobs. Based upon this evidence, the court found that Industrial had breached its collective bargaining agreement by subcontracting work to non-union Harris employees. Although acknowledging that the actual amount of damages was uncertain because of the paucity of evidence of the extent of covered work performed by Harris employees, the court nevertheless found the evidence supported an award of $17,458 in unpaid contributions for covered work performed by thirteen Harris masons. The court entered judgment against Industrial in this amount, plus liquidated damages and interest, as provided in the collective bargaining agreement.
 
 
 3
 On appeal, the Trust Funds seek to increase their damage award to include contributions for the work performed by Harris brick masons not covered by the judgment below. In particular, they challenge the district court's refusal to award contributions for hours worked by an additional 35 Harris masons who worked for both Harris and Industrial during one quarter. The district court, after finding that "[s]ome of these masons may have done covered work for which contributions should have been paid, but there is no evidence of the extent of such work," concluded that any damage award would be unduly speculative. Excerpt of Record (E.R.) at 111. The Trust Funds contend on appeal that their showing that each of these 35 Harris employees did some covered work during that quarter rendered Industrial liable for contributions for all hours worked by each of these 35 employees during the quarter in the absence of any evidence showing the extent of covered work performed. The Trust Funds argue that this result follows from Industrial's failure to maintain adequate records to permit the accurate calculation of contributions due, records which, the Trust Funds contend, employers are required to maintain under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. Sec. 1059(a)(1). In essence, the Trust Funds contend that their proof of the fact of damage, i.e., that Industrial breached the collective bargaining agreement by subcontracting some covered work to the 35 non-union masons, shifted the burden to Industrial to come forward with evidence showing that the Trust Funds' estimate of the amount of damage was unreasonable.
 
 
 4
 Industrial cross-appeals seeking to have the damage award reduced because it was based in part upon testimony that, Industrial argues, the court should not have admitted into evidence. In addition, both Industrial and Harris argue on cross-appeal that the district court erred in refusing to award them attorney's fees. All parties seek attorney's fees on appeal.
 
 
 5
 * We first consider the Trust Funds' contention that the district court erred in determining that Industrial and Harris are not alter egos, an issue of fact that we review under the clearly erroneous test. See NLRB v. Big Bear Supermarkets No. 3, 640 F.2d 924, 928-29 (9th Cir.), cert. denied, 449 U.S. 919, 101 S.Ct. 318, 66 L.Ed.2d 147 (1980).
 
 
 6
 In deciding whether two firms are alter egos for the purpose of federal labor law, courts consider such factors as whether they have interrelated operations, common management, centralized control over labor relations, and common ownership. Carpenters' Local Union No. 1478 v. Stevens, 743 F.2d 1271, 1276 & n. 6 (9th Cir.1984), cert. denied, 471 U.S. 1015, 105 S.Ct. 2018, 85 L.Ed.2d 300 (1985). The critical inquiry is whether an employer is using a non-union company in a sham effort to avoid collective bargaining obligations. See id. at 1276-77 & n. 6.[1]
 
 
 7
 In arguing that the two firms are alter egos, the Trust Funds cite evidence that both companies are owned by the same holding company; that some persons serve as officers and directors of both companies; that board meetings for both companies are sometimes held simultaneously; that the firms have commonly managed payroll systems, have their accounts receivable financed on the same loan, are located at the same address, and share certain accounting functions, clerical staff, a supply yard, and raw materials; that employees regularly switch back and forth between the two companies; and that the same person directs employees of both companies to job assignments.
 
 
 8
 Despite the obviously close relationship between the two firms, the trial court's finding that they are not alter egos for labor law purposes is not clearly erroneous. First, Harris was formed twelve years before Industrial, which indicates that Harris was not created for the purpose of shifting a portion of Industrial's work to a non-union company.[2] Second, the two companies target different markets: Industrial builds major block walls at new housing tracts and Harris constructs small block walls and chainlink fences at individual private residences. Finally, the number of union members employed by Industrial increased during the relevant period, notwithstanding the fact that some Harris employees performed some work on Industrial jobs.
 
 
 9
 Because the evidence points both ways on the issue, we cannot say it was clearly erroneous for the district court to find that Harris was not an alter ego being used to circumvent the collective bargaining obligations of Industrial.[3] See Stevens, 743 F.2d at 1276-77. Consequently, the district court did not err in rejecting the Trust Funds' claim that all Harris brick masons were covered by Industrial's collective bargaining agreement.
 
 II
 
 10
 We next consider whether the district court erred in denying the Trust Funds damages for Industrial's failure to make contributions for work performed by an additional 35 Harris brick masons. The district court concluded that any damages awarded for covered work done by these masons would be "based on speculation or guesswork" because "there is no evidence of the extent of such work." E.R. at 111. It is undisputed that these 35 Harris masons performed some covered work for Industrial in addition to working on Harris jobs during one quarter. The evidence also shows the total number of hours these 35 employees worked during the quarter. Reporter's Transcript (R.T.) at 4-4; Clerk's Record at 62, Bartel Declaration at 2-4. What is unknown is the number of hours they worked on Industrial jobs as distinguished from Harris jobs. Notwithstanding the failure of proof on the extent of covered work performed by these masons, the Trust Funds claim they are entitled to contributions for all their hours because of Industrial's failure to keep adequate records. In making this argument, the Trust Funds rely heavily on Combs v. King, 764 F.2d 818 (11th Cir.1985).
 
 
 11
 In Combs, the district court granted the employer summary judgment on the ground that the plaintiff-trustees' proof of the amount of unpaid trust fund contributions was insufficient to raise a triable issue of fact. The Eleventh Circuit did not disagree that the trustees' proof of damage would normally have been insufficient to survive summary judgment. The appellate court reversed, however, on the ground that the employer's failure to keep adequate records of her employees' hours shifted to her the burden of coming forward with evidence showing the number of hours they worked. Combs rests on two express rules of decision: First, that ERISA imposes a duty upon employers to maintain records of the number of hours worked by employees adequate to permit trustees to determine the accuracy of the employer's contributions; and second, that once the trustees produce evidence raising genuine questions about the accuracy of the employer's records and the number of hours worked by the employees, the burden shifts to the employer to come forward with evidence of the precise amount of work performed. 764 F.2d at 822-27.
 
 
 12
 We find the reasoning in Combs to be persuasive, and we adopt both rules of decision. As the Eleventh Circuit discussed at length, both the language and the legislative history of ERISA clearly require employers to keep records of their employees' hours in order to permit the calculation of benefits due. See 29 U.S.C. Sec. 1059(a)(1) ("every employer shall ... maintain records with respect to each of his employees sufficient to determine the benefits due or which may become due to such employees"); Combs, 764 F.2d at 822-25.
 
 
 13
 We also agree with the Eleventh Circuit that the second rule of decision--shifting the burden on the issue of the amount of contributions payable when the employer fails to keep adequate records as required by ERISA--finds strong support in Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946). In Anderson, the Court held that when an employer fails to keep adequate records of hours worked as required by the Fair Labor Standards Act (FLSA), 29 U.S.C. Sec. 201 et seq., the employee carries his burden of proving damages "if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." Id. at 687, 66 S.Ct. at 1192. The Court explained its reasoning as follows:
 
 
 14
 The employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with the requirements of [the FLSA].... Nor is such a result to be condemned by the rule that precludes the recovery of uncertain and speculative damages. That rule applies only to situations where the fact of damage is itself uncertain. But here we are assuming that the employee has proved that he has performed work and has not been paid in accordance with the statute. The damage is therefore certain. The uncertainty lies only in the amount of damages arising from the statutory violation by the employer. In such a case "it would be a perversion of fundamental principles of justice to deny all relief to the injured person, and thereby relieve the wrongdoer from making any amend for his acts." It is enough under these circumstances if there is a basis for a reasonable inference as to the extent of the damages.
 
 
 15
 Id. at 688, 66 S.Ct. at 1192 (citations omitted) (quoting Story Parchment Co. v. Paterson Parchment Paper Co., 282 U.S. 555, 563, 51 S.Ct. 248, 250, 75 L.Ed. 544 (1931)). This reasoning applies with equal force to cases arising under ERISA. The records that employers are required to keep by the FLSA and by ERISA may be the only evidence available to employees to prove that their employers have failed to compensate them in accordance with the statute. An employer cannot escape liability for his failure to pay his employees the wages and benefits due to them under the law by hiding behind his failure to keep records as statutorily required.
 
 
 16
 Here, as in Combs and Anderson, the fact of damage is certain. It is undisputed that the Trust Funds received no contributions for work performed by these 35 Harris masons even though they did some covered work during the relevant time period. As the Supreme Court said in Anderson, "[t]he uncertainty lies only in the amount of damages arising from the statutory violation by the employer." 328 U.S. at 688, 66 S.Ct. at 1193. Although the Trust Funds have established that these brick masons performed some covered work for Industrial, they are unable to prove the extent of such work because of Industrial's failure to keep adequate records. Accordingly, we follow the lead of the Eleventh Circuit in Combs and hold that once the Trust Funds proved the fact of damage and Industrial's failure to keep adequate records, the burden shifted to Industrial to come forward with evidence of the extent of covered work performed by the 35 Harris employees. Industrial failed to come forward with any such evidence when it had an opportunity at trial to do so. Therefore, we hold that because Industrial violated its statutory duty under ERISA to keep accurate records and failed otherwise to come forward with any evidence of the extent of covered work performed by the 35 Harris masons, the Trust Funds are entitled as a matter of law to recover contributions for all hours worked by these 35 masons during the quarter in which they were shown to have performed some covered work for Industrial. Accordingly, we reverse the district court on this issue and remand for the limited purpose of ascertaining the amount of the contributions the Trust Funds are entitled to recover from Industrial based on the total number of hours worked by the 35 Harris masons during the relevant quarter.[4]
 
 III
 
 17
 The Trust Funds challenge the district court's denial of contributions for hours worked by Charles Penhall, based on its determination that Penhall, a foreman, did no mason's work that was covered by the collective bargaining agreement. The only evidence indicating that Penhall did covered work was one bricklayer's statement, in response to the question whether Penhall was a member of the Laborer's Union: "Yes, but he laid block too." R.T. at 3-140. The district court was not obliged to credit this testimony. Our review of the record convinces us that the district court's finding that "[t]he record demonstrates that Mr. Penhall was indeed a foreman and that to decide he did masonry work while in that capacity would be mere speculation" is not clearly erroneous.
 
 IV
 
 18
 The Trust Funds seek to recover their attorney's fees on appeal. ERISA requires the court to award attorney's fees, including fees on appeal, to a prevailing fiduciary in an action to collect delinquent fringe benefit fund contributions. 29 U.S.C. Sec. 1132(g)(2); Southwest Adm'rs, Inc. v. Rozay's Transfer, 791 F.2d 769, 778 (9th Cir.1986), cert. denied, --- U.S. ----, 107 S.Ct. 951, 93 L.Ed.2d 999 (1987). Although the Trust Funds have not succeeded on every argument, they have demonstrated that Industrial is liable for additional contributions. Consequently, they are entitled to collect from Industrial an award of reasonable attorney's fees on appeal attributable to the issue discussed above in Part II. See Smith v. CMTA-IAM Pension Trust, 746 F.2d 587, 591 (9th Cir.1984).
 
 V
 
 19
 On cross-appeal, Industrial contends that the judgment should be reduced to the extent that it includes contributions for covered work performed by eight particular Harris brick masons. The witnesses whose testimony established that these non-union masons performed covered work were not mentioned in the pretrial order. Industrial argues that the award of contributions for hours worked by these masons should be reversed because the district court abused its discretion in admitting into evidence testimony of witnesses not listed in the pretrial order. We disagree.
 
 
 20
 The decision whether a witness not named in the pretrial order may testify is a "matter[ ] peculiarly within the trial court's discretion." Forro Precision, Inc. v. International Bus. Machines Corp., 673 F.2d 1045, 1058 (9th Cir.1982), cert. denied, 471 U.S. 1130, 105 S.Ct. 2664, 86 L.Ed.2d 280 (1985). The court may permit witnesses to testify who have not been mentioned in the pretrial order unless the testimony is offered in bad faith or would unfairly prejudice an opposing party. Campbell Indus. v. M/V Gemini, 619 F.2d 24, 27-28 (9th Cir.1980).
 
 
 21
 There is no evidence here of bad faith or unfair prejudice. First, five of the witnesses were Harris or Industrial employees who Industrial should have known would have knowledge regarding the interrelationship of the two companies. Additionally, the Trust Funds gave notice that they might augment their witness list in light of new discovery. When they did so, the Trust Funds offered to make the witnesses available for deposition and provided a summary of the proposed testimony, and nothing in the record suggests that the witnesses testified outside the scope of these summaries. Finally, the new witnesses' testimony did not unduly delay the trial. Accordingly, the court acted well within its discretion in admitting their testimony. See Forro Precision, Inc., 673 F.2d at 1058 (trial court did not err in permitting witnesses to testify even though they were not identified until after trial commenced).
 
 VI
 
 22
 Industrial also argues on cross-appeal that the district court erred in refusing to award attorney's fees that Industrial claimed on the ground the Trust Funds failed to prove at trial that it and Harris are alter egos. Should Industrial prevail on this issue in this court, it also requests fees on appeal. Unlike a prevailing fiduciary, an employer who prevails in an action under ERISA is not automatically entitled to attorney's fees. The statute leaves it to the discretion of the district court whether to award fees to a prevailing employer. 29 U.S.C. Sec. 1132(g)(1). The district court's decision not to award fees is entitled to deference and will be upheld if it is based on consideration of the proper legal standards and is not an abuse of discretion. Hope v. International Bhd. of Electrical Workers, Ninth Dist., 785 F.2d 826, 831 (9th Cir.), cert. dismissed, --- U.S. ----, 107 S.Ct. 29, 92 L.Ed.2d 779 (1986).
 
 
 23
 As noted above, the Trust Funds successfully showed that Industrial improperly subcontracted union work to Harris employees and failed to pay fringe benefit contributions as required by the collective bargaining agreement. Consequently, the district court noted, in applying the Hummell factors,[5] that the Trust Funds did not conduct themselves in a way that courts should deter, sought to benefit all participants and beneficiaries of an ERISA plan, and pursued generally meritorious contentions. The court also noted that even though the second Hummell factor, the ability to satisfy a fee award, "does not cut in favor of either side," and "the most significant questions concerning ... ERISA were resolved against plaintiffs," the court concluded that "the balance still weighs in their favor." E.R. at 114. We agree. As we have observed before, "[e]ven though it appears that the plaintiffs' position was incorrect, this does not necessarily mean the plaintiffs' position was 'unmeritorious' or that suit was brought in bad faith. The district court did not use incorrect legal standards and its decision to deny attorney's fees is entitled to deference." Hope, 785 F.2d at 831. The district court properly applied the relevant legal standards and acted well within its discretion in denying Industrial attorney's fees at trial.
 
 
 24
 We also hold, for the same reasons articulated by the district court, that Industrial is not entitled to recover its fees on appeal. The Trust Funds are quite free of culpability in this matter and there is no reason to deter conduct such as theirs. Moreover, the Trust Funds sought to benefit all plan beneficiaries and they have resolved a significant legal question regarding proof of subcontracting damages. Finally, many of their arguments had substantial merit. See Hummell, 634 F.2d at 453.
 
 VII
 
 25
 Harris also cross-appeals, seeking attorney's fees both below and on appeal because the Trust Funds failed to obtain a judgment against it on any issue. In denying Harris's fee request, the district court found that "although Harris is not legally liable, it is factually culpable. Harris permitted its masons to do covered work on Industrial jobs, and it kept these masons on its payroll. It took on Industrial masons who were behind in their union dues and paid them while they worked on Industrial projects. Therefore, Harris stands in pari delicto and should not receive its attorney's fees." E.R. at 115. Not only was this conclusion not an abuse of discretion, it aptly states our views of Harris's position in this court as well.
 
 CONCLUSION
 
 26
 We reverse the district court's denial of damages for the 35 masons who were stipulated to have worked for both Harris and Industrial during the same quarter, and we remand to permit the district court to award the Trust Funds additional damages pursuant to Part II of this opinion. The district court shall also award the Trust Funds attorney's fees on appeal attributable to this issue. In all other respects, the judgment of the district court is affirmed. Each party shall bear its own costs on appeal.
 
 
 27
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
 
 
 
 [1]
 By this inquiry, courts endeavor to distinguish so-called "double-breasted" construction firms that are permissible under federal labor law from those that are not. A "double-breasted" operation is one in which a contractor operates both a union company and a non-union company in order to bid competitively on both union and non-union construction projects. The legality of such practices in various situations has been hotly contested. See, e.g., Stevens, 743 F.2d at 1275-76; Carpenters Local Union No. 1846 v. Pratt-Farnsworth, Inc., 690 F.2d 489 (5th Cir.1982), cert. denied, 464 U.S. 932, 104 S.Ct. 335, 78 L.Ed.2d 305 (1983), and authorities cited therein
 
 
 [2]
 On this point, the Fifth Circuit has observed, however:
 [T]he prior existence of the nonsignatory is not necessarily dispositive, since it may always be argued that although the nonsignatory existed as a bona fide operation prior to the agreement, a disgruntled management later sought to use the company as a means to avoid its obligations by deliberately shifting all the signatory's work away to the nonsignatory and leaving the signatory as an empty shell.
 Pratt-Farnsworth, Inc., 690 F.2d at 508 n. 8.
 
 
 [3]
 Under the clearly erroneous standard of review, we must accept the lower court's findings of fact unless we are "left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)
 
 
 [4]
 The Trust Funds seek additional contributions based on two other theories. First, they seek contributions for hours worked by Harris employees whom other employers had previously reported to the Trust Funds as having done union work. The fact that the employees previously did union work, the Trust Funds contend, warrants an inference that the employees did union work while in Harris's employ. Because there is no basis in the record for drawing such an inference, the district court's finding that they did no covered work is not clearly erroneous
 The Trust Funds also seek contributions for all hours worked by all Harris masons premised on testimony of two Industrial employees who estimated that, on a regular basis, between ten and twenty-five percent of employees on Industrial projects were Harris employees. One of these witnesses conceded, however, that his was "a rough guess," and the other admitted that "I just have no idea. I would say it could have been 20 percent...." R.T. at 3-124, 3-137. Even under the relaxed standard of proof applied in Combs, and even if this testimony were credited by the trier of fact, the testimony is still too speculative to support a finding that a certain number of identified Harris masons worked on Industrial jobs. This testimony fails to establish even the fact of damage; the Trust Funds are therefore not helped by the relaxed standard of proof in Combs and Anderson, which applies only to proof of the amount of damage.
 
 
 [5]
 Hummell v. S.E. Rykoff & Co., 634 F.2d 446 (9th Cir.1980). In exercising its discretion, a district court weighs five factors: (1) the degree of bad faith or culpability of the party against whom fees are sought; (2) the ability of the party to satisfy a fee award; (3) whether a fee award would deter others in similar circumstances; (4) whether the party requesting fees sought to benefit all participants of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions. Id. at 453