MOTION PICTURE INDUSTRY
PENSION & HEALTH PLANS,
Plaintiff–Appellee,

v.

N.T. AUDIO VISUAL SUPPLY,
INC., Defendant–Appellant.

No. 98–55611.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 1, 1999

Filed Aug. 7, 2001

Lisa F. Rosenthal, Law Offices of Lisa
F. Rosenthal, Woodland Hills, California;
Michael J. Rand (argued), Law Offices of

**1064**

Michael J. Rand, Encino, California, for the appellant.

Steven Holguin, Satoshi Yanai (argued), Holguin & Garfield, Los Angeles, California, for the appellee.

Before: PREGERSON, NOONAN, and O'SCANNLAIN, Circuit Judges.

OPinion by Judge O'SCANNLAIN; Dissent by Judge PREGERSON

O'SCANNLAIN, Circuit Judge:

We must decide, in an action under the Employment Retirement Income Security Act ("ERISA"), whether trustees of employee benefit plans produced sufficient evidence of employer liability on summary judgment to shift the burden of production.

I

N.T. Audio, a corporation engaged in the business of creating optical sound negatives, employs approximately eighteen local union members. N.T. Audio is a party to collective bargaining agreements with the International Alliance of Theatrical State Employees and Motion Picture Operators ("IATSE") and the Alliance of Motion Picture and Television Producers ("AMPTP"). Pursuant to these agreements, N.T. Audio was obligated to make contributions on behalf of its employees who were performing work covered under those agreements to two pension and employee benefits plans: (1) the Motion Picture Industry Health Plan and (2) the Motion Picture Industry Pension Plan (collectively, the "Plans"). The collective bargaining agreements also called for N.T. Audio to report to the Plans every hour worked by or guaranteed to their employees covered by those agreements.

The employer-union collective bargaining agreements provided remedies of liquidated damages and interest in the event of N.T. Audio's default in payment. Furthermore, trustees of the Plans were authorized to audit the employment and payroll records of N.T. Audio to ensure that it complied with its contribution responsibilities.

In due course, trustees of the Plans initiated an audit of N.T. Audio's records, covering the period from January 1, 1989 through March 20, 1993. At the conclusion of the audit, in December 1995, they informed N.T. Audio that it owed the Plans approximately $32,000. N.T. Audio objected to the auditors' findings in a letter dated January 23, 1996.

On May 13, 1997, the Plans filed suit in the Central District of California under ERISA provisions 29 U.S.C. §§ 1132 and 1145, alleging that N.T. Audio had failed to pay the delinquent contributions identified in the audit. The Plans filed a motion for summary judgment on December 15, 1997, to which they attached a declaration of their chief auditor, Teri Goldstein, reciting that N.T. Audio had failed to keep adequate records and that the Plans' auditors had raised serious questions as to whether N.T. Audio employees had performed covered work for which contributions were not paid. Goldstein stated by declaration that "often, the absence of detailed records made it impossible to determine the precise number of hours or type of work performed by [the employees]."

N.T. Audio filed its opposition to the motion for summary judgment on December 23, 1997, responding that the Plans' motion should fail because "they have not identified what work these individuals have done." On February 23, 1998, the district court entered judgment in favor of the

Plans. N.T. Audio timely filed this appeal.[1]

## II

Both sides agree that the controlling case on appeal is *Brick Masons Pension Trust v. Industrial Fence & Supply, Inc.*, 839 F.2d 1333 (9th Cir.1988). *Brick Masons* establishes that a trustee in an ERISA contribution case can make a showing that will shift the burden to the employer to come forward with evidence of the precise amount of covered work performed by its employees. *Id.* at 1337–40. The dispute between the Trustees and N.T. Audio is focused primarily on the quantum of the showing that the Trustees must make in order to effect such a shift in the burden of production.

In *Brick Masons,* union fringe benefit funds brought an action against an employer to recover contributions for certain masons employed by one of the employer's nonunion subsidiaries, who performed covered work for that same employer's unionized subsidiary. *Brick Masons,* 839 F.2d at 1336–37. There, the district court expressly found that while there was evidence that some covered work had been performed by the nonunion masons, there was no evidence of the extent of that work. *Id.* The district court concluded, therefore, that any damage award would be too speculative. *Id.*

On appeal, we reversed the district court and held that 29 U.S.C. § 1059(a)(1) of ERISA imposes a duty on employers to maintain records of the number of hours worked by employees. *Id.* at 1338. Consequently, we held that "once the trustees produce evidence raising genuine questions about the accuracy of the employer's records and the number of hours worked by the employees, the burden shifts to the employer to come forward with evidence of the precise amount of work performed." *Id.* at 1338. That is, "once the Trust Funds proved the fact of damage" and the employer's "failure to keep adequate records," the burden shifted to the employer to come forward with evidence of the "extent of the [damage]." *Id.* at 1338–39. The "fact of damage [was] certain" in *Brick Masons* because "[i]t was undisputed that the Trust Funds received *no* contributions for work performed by [35 masons] even though they did *some* covered work during the relevant time period." *Id.* at 1338 (emphasis added). The only uncertainty was "in the amount of damages arising from the statutory violation by the employer." *Id.* at 1338 (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 688, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946)). It was on this question that "the burden shifted to [the employer] to come forward with evidence of the extend of the covered work performed...." *Id.* at 1338–39.

---

1. Before we were able to consider the merits of this appeal, we had to deal with the jurisdictional bar presented by *Local 159 v. Nor–Cal Plumbing, Inc.*, 185 F.3d 978, 981–84 (9th Cir.1999) (holding that, because an ERISA plan is not a "participant, beneficiary, [or] fiduciary," subject matter jurisdiction did not exist under § 502(e) of ERISA over a suit brought by such a plan). Subsequent to oral argument, on April 10, 2000, we ordered the Plans to show cause why this appeal should not be dismissed for their failure to join their fiduciaries as necessary parties to this suit.

In due course, on August 30, 2000, we granted the Plans' motion to join two members of their Board of Directors, Managing Director Hank Lachmund and Director Bruce C. Doering (collectively, the "Trustees"), as fiduciary plaintiffs in this suit. Once fiduciaries of the Plans were joined, jurisdiction was established pursuant to § 502(e) of ERISA, which grants exclusive jurisdiction to the district courts to hear "civil actions under this subchapter brought ... by a participant, beneficiary, [or] fiduciary...." 29 U.S.C. § 1132(e)(1).

Thus, under *Brick Masons*, once the Trustees show 1) that N.T. Audio failed to keep adequate records, and 2) that there exist some employees who (a) performed covered work that was (b) unreported to the trust funds, then the burden shifts to the N.T. Audio to show the extent of the unreported covered work for those employees.[2]

■ There is little doubt that the Trustees met their first threshold burden, proving that N.T. Audio failed to keep adequate records. The Plans submitted in support of their motion for summary judgment declarations of the auditors who examined those records. Both auditors testified that N.T. Audio's records were insufficiently clear to determine precisely how many hours of covered work were performed by N.T. Audio's employees. Specifically, the Plans' senior auditor, Teri Goldstein, declared that she examined the available payroll records, timecards, and W–2s of all employees who had hours reported to the Plans during the audit period, and found some of them were compensated for more hours of work than had been reported. Goldstein further noted that while the documents occasionally revealed the nature of the services for which employees were being paid, they more frequently failed to identify the type of work performed. A second auditor, Steven Smith, confirmed these declarations, stating that he found N.T. Audio's records to be insufficiently detailed to allow him to identify the type of work performed. The affirmative declarations of the Plans' auditors are sufficient to meet the Trustees' first threshold burden.

■ Moreover, N.T. Audio effectively admitted the inadequacy of its own records when, in responding to a discovery request for all documents identifying the duties of employees, it responded that it "[did] not have such documents." If the records did, in fact, exist, N.T. Audio could simply have produced them, thereby refuting the Trustees' threshold showing. But it did not. This admission can "constitute a basis for summary judgment." *In re Pacific Express, Inc.*, 780 F.2d 1482, 1489 (9th Cir.1986).

■ The Trustees did not, however, produce evidence meeting their other

---

**2.** The dissent complains that this formulation "raises the standard of proof required of the Plan Trustee." Dissent at 1068. It argues that while under *Brick Masons* "the Plan Trustee is merely required to 'raise genuine questions' about the accuracy of the employer's records and the number of hours worked," our "formulation requires the Plan Trustee to 'show' that he satisfied the elements of his burden." The dissent concludes (without explanation) that this increases the burden on the Plan Trustee because "it is more difficult to 'show' that something exists, than it is to 'raise a genuine question' whether something exists."

Whatever the merits of the dissent's contentions, *Brick Masons* itself demonstrates that this formulation is not a change at all. In *Brick Masons*, we explicitly held that the burden shifted when the trustees *"proved"* the facts of damage and the employer's failure to keep adequate records. *Id.* at 1338–39 (emphasis added). We also observed that "produc[ing] *evidence* raising genuine questions about the accuracy of the employer's records and the number of hours worked by the employees" would suffice to shift the burden. *Id.* at 1338 (emphasis added). These two statements are entirely consistent; indeed, evidence that "proves" the fact of damage and the employer's failure to keep adequate records *necessarily* "raises genuine questions" about the accuracy of the employer's records and the number of hours worked by employees. That we today describe the trustees' duty as requiring them to "show" the facts of damage and the employer's failure to keep adequate records is therefore entirely consistent with our precedent. *See* BLACK'S LAW DICTIONARY 1385 (7th ed.1999) (defining "show" as "[t]o make (facts, etc.) apparent or clear *by evidence;* to *prove*") (emphasis added).

threshold burdens, proving that there existed some employees who (a) performed covered work that was (b) unreported to the Plans. Although the Trustees produced evidence to establish that N.T. Audio failed to report some of the hours worked by its employees, it did not produce evidence establishing that those unreported hours corresponded to *covered* work.

In previous cases, employee benefit plans have made the requisite showing that some of the unreported hours corresponded to covered work by submitting testimony by employees who performed the unreported work. *E.g., Brick Masons,* 839 F.2d at 1340; *Combs v. King,* 764 F.2d 818, 820 (11th Cir.1985). In this case, the Plans did not submit any employee testimony along with their motion for summary judgment, and, instead, offered only the testimony of their auditors. A close reading of this testimony, however, reveals that the Plans' auditors failed to show that any of the unreported hours corresponded to covered work.

There were two categories of unreported hours identified by the auditors. The first category was based on discrepancies between "payroll records, timecards, and W–2s" and the data reported by N.T. Audio to the Plans. Rather than establish that any of these discrepancies corresponded to covered work, however, the auditors appeared to presume without any basis that all of these hours were for covered work, concluding: "Since no documents were made available to explain the discrepancy, these additional hours for which pay was received were classified as underreported [covered] hours."

The second category was based on cash payments to employees unreported to the Plans. Again, rather than establish that any of these payments corresponded to covered work, the auditors appeared to presume without any basis that all of these hours were for covered work, concluding: "[I]n the absence of such documentation, payments made to individuals who were known participants in the Plans were presumed to be for covered work."

Although it is true that each employee in question had performed some covered work for N.T. Audio, the auditors did not establish that any of the unreported hours corresponded to this covered work. As a result, the Trustees cannot prove "the fact of damage" that some of the unreported hours corresponded to covered work, and have, therefore, failed to meet their threshold burdens.[3] Thus, it was inappro-

---

**3.** Despite the Trustees' failure to meet their threshold burdens, the dissent would nonetheless affirm because, in its view, "it is reasonable to infer ... that the work performed by the employees was work covered by the collective bargaining agreement" (even though no proof of this was offered) because the Trustees demonstrated that (1) "the employees had a history of performing covered work for the defendant-employer," and (2) "some work performed by these employees was unreported to the plans." Dissent at 10231. The dissent, however, misapprehends the use of a burden-shifting approach in ERISA actions of this kind.

Burden-shifting alters the normal procedure—i.e., that a plaintiff must plead and prove its damages—and instead forces a defendant to disprove a plaintiff's claimed but unproven damages. This alteration is appropriate only where the fact of damage is itself certain, but the amount is uncertain because of an employer's substandard bookkeeping practices. *See Brick Masons,* 839 F.2d at 1338 (quoting *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 688, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946)). In such cases, the normal rule is eschewed in favor of burden-shifting because "it would be a perversion of fundamental principles of justice to deny all relief to the injured person, and thereby relieve the wrongdoer from making any amend for his acts." *Id.*

In contrast, the dissent's approach would allow trustees to sue an employer that keeps shoddy records—and; if the employer cannot disprove the trustees' alleged but unproven damages, to obtain a recovery—without proving that the employer's substandard book-

priate for the district court to grant summary judgment in favor of the Plans.

## III

For the foregoing reasons, the district court's grant of summary judgment to the Plans, through, now, their Trustees, is

REVERSED and REMANDED.

PREGERSON, Circuit Judge, dissenting:

The majority today fashions a rule that imposes a difficult burden of production on the Plan Trustees and rewards employers who blatantly violate the record keeping duties imposed by ERISA. I respectfully dissent.

## I.

The majority decision erodes the *Brick Masons* standard for shifting the burden of production · in an ERISA contribution case where the employer has failed to keep adequate records, as required by ERISA. In *Brick Masons Pension Trust v. Indus. Fence & Supply, Inc.*, 839 F.2d 1333 (9th Cir.1988), our circuit followed the Eleventh Circuit and adopted for ERISA cases the burden-shifting scheme established by the Supreme Court in the context of Fair Labor Standards Act cases. Under this scheme, "once the trustees produce evidence raising genuine questions about the accuracy of the employer's records and the number of hours worked by the employees, the burden shifts to the employer to come forward with evidence of the precise amount of work performed." *Brick Masons*, 839 F.2d at 1338 (citing *Combs v. King*, 764 F.2d 818, 822–27 (11th Cir. 1985)).

In *Brick Masons*, we adopted this burden shifting rule based on the legislative history of ERISA and public policy considerations. "Both the language and the legislative history of ERISA clearly require employers to keep records of their employees hours *in order to permit the calculation of benefits due." Id.* at 1338 (emphasis added). We stressed in *Brick Masons* the importance of the record keeping requirements of ERISA when we stated that the "records employers are required to keep by ... ERISA may be the only evidence available to employees to prove that their employers have failed to compensate them in accordance with the statute." *Id.* Finally, we determined that the burden-shifting scheme was necessary to ensure that employers did not benefit from their failure to maintain records. "An employer cannot escape liability for his failure to pay his employees the wages and benefits due to them under the law by hiding behind his failure to keep records as statutorily required." *Id.*

Under our holding in *Brick Masons*, a Plan Trustee meets the burden of production in an ERISA contribution case by producing evidence that: (1) raises genuine questions about the accuracy of the employer's records; and (2) raises genuine questions about the number of hours worked by the employees. *Id.* at 1337–38. In *Brick Masons*, we did not specifically address the question of who bears the burden of proving that the unreported work was covered by the collective bargaining agreement.

Faced with this question, the majority reformulates the *Brick Masons* burden

---

keeping caused the trustees *any damage.* Such a broad expansion of *Brick Masons* is not supported by the policy behind the use of burden-shifting in ERISA cases, and indeed, might raise constitutional concerns. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 180, 120

S.Ct. 693, 145 L.Ed.2d 610 (2000) (explaining that to satisfy the standing requirements of Article III, a plaintiff must show, *inter alia,* that it has suffered "an 'injury in fact' that is ... concrete and particularized and ... not conjectural or hypothetical").

shifting scheme. The majority's new formulation requires the Plan Trustee to "show that (1) the [defendant employer] failed to keep adequate records, and (2) that there exist some employees who (a) performed covered work that was (b) unreported to the trust funds." Maj. Op. at 1065. The majority's new formulation increases the burden on the Plan Trustee by requiring the Plan Trustee to show that the unreported work is covered by the collective bargaining agreement. This added requirement contravenes the policy concerns on which we based our decision in *Brick Masons*. Additionally, the majority's new formulation raises the standard of proof required of the Plan Trustee. Under *Brick Masons* the Plan Trustee is merely required to "raise genuine questions" about the accuracy of the employers records and the number of hours worked. The majority's new formulation requires the Plan Trustee to "show" that he satisfied the elements of his burden. The new formulation increases the burden on the Plan Trustee because it is more difficult to "show" that something exists, than it is to "raise a genuine question" whether something exists.

The facts of this case illustrate the difference between the *Brick Masons* standard and the majority's new formulation. In this case, the Plan Trustees introduced evidence of an audit showing that the defendant employer, N.T. Audio, maintained incomplete records about the number of hours worked, and the work performed by its employees. As noted by the majority, N.T. Audio conceded the inadequacies of its records in its answers to interrogatories. Maj. Op. at 1066. The Plan Trustees also introduced evidence that N.T. Audio failed to report to the Plans work performed by employees who had previously performed covered work for N.T. Audio. Maj. Op. at 1066–67.

Under the majority's new formulation, the burden would not shift to the defendant, N.T. Audio, because the Plan Trustees did not show that the unreported hours were for work covered by the collective bargaining agreement. But under the *Brick Masons* standard, the Trustees would have satisfied their burden. In order to shift the burden of production to the employer under *Brick Masons*, the Trustees simply needed to raise genuine questions about the number of hours worked by the employees. As the majority concedes, the Trustees demonstrated that the employees had a history of performing covered work for the defendant-employer. And, as the majority further concedes, the Trustees demonstrated that some work performed by these employees was unreported to the Plans. It is reasonable to infer from these facts that the work performed by the employees was work covered by the collective bargaining agreement. Thus I would affirm the district court's determination that the Trustees raised genuine questions about the number of covered hours worked by the employees. *See Combs*, 764 F.2d at 827 ("The trustees met their burden when they produced affidavits of two of Mrs. King's employees and of the certified public accountant. These affidavits *raised genuine questions about the accuracy of Mrs. King's records* and the *number of hours worked by her employees*.") (emphasis added).

The majority's new formulation of the Plan Trustees' burden runs contrary to the policies identified in *Brick Masons*. The employer's records may be the only reliable evidence the Trustees can use to establish liability for contributions to the Plans. Under the majority's formulation, an employer stands to benefit from its failure to keep records as required by ERISA. *See* 29 U.S.C. § 1059(a)(1) ("every employer shall ... maintain records with respect to each of his employees suffi-

cient to determine the benefits due or which may become due to such employees"); *Central States Pension Fund v. Cent. Transport, Inc.,* 472 U.S. 559, 573, 105 S.Ct. 2833, 86 L.Ed.2d 447 (1985); ("[ERISA, 29 U.S.C. § 1059] requir[es] employers to maintain records on employees and to furnish to benefit plans the information needed for the plans' fulfillment of their reporting duties."). The majority suggests that the Plan Trustees in this case could attach affidavits from the employees to establish that the unreported work was covered by the collective bargaining agreement. This assumes that employees will be able to remember in detail the number of the hours and type of work performed in the past.[1] If this assumption proves false, the Plan Trustees would not meet their burden under the majority's formulation, and the case would end without recourse.

In contrast, under *Brick Masons,* once the Plan Trustees meet their burden to raise genuine issues, the burden shifts to the employer to prove that the unreported hours were for covered work. The employer could meet its burden in various ways. Of course, if the employer maintained accurate and reliable records documenting the number of hours and the type of work performed by each employee as required by ERISA, such records should suffice to end the litigation. *See* 29 U.S.C. § 1059. If, as is true in this case, the employer fails to abide by its statutory duty to maintain these records, the employer may still introduce other forms of evidence to meet its burden.

*Michigan Laborers' Health Care Fund v. Grimaldi Concrete, Inc.,* 30 F.3d 692 (6th Cir.1994) is the only circuit opinion to consider the question of who has the burden of producing evidence that work performed was work covered under the collective bargaining agreement. In *Grimaldi Concrete,* relying upon *Brick Masons,* the Sixth Circuit held that "an employer's failure to maintain adequate records shifts the burden to the employer to prove that the work performed was covered or not covered." *Id.* at 696. The employer in *Grimaldi Concrete* failed to keep records showing "which laborers performed covered work, or how many hours were spent performing covered work." *Id.* at 694. Because of this record deficiency, the trust fund "auditors were unable to determine the amount of work for which contributions were due." *Id.* The Sixth Circuit found that the employer's failure to maintain records shifted the burden to the employer "to prove what work was covered and what was not covered." *Id.* at 696.

In short, I would adhere to the burden shifting standard articulated by *Brick Masons,* and hold that a Plan Trustee satisfies its burden of production by showing that the employer kept inadequate records and by raising genuine questions as to whether employees have performed covered work for which contributions were not paid. Applying this standard to the instant case, I would find that the Plan Trustees satisfied their threshold burden and affirm the district court.

---

1. This burden also assumes that employees will be willing to testify against their employ-