IKUTA, Circuit Judge,
dissenting:
Today the majority goes off the rails. Its one-off burden-shifting rule, apparently specially designed to let Barton win on one element of his claim for benefits under an ERISA plan, is not only contrary to the Supreme Court’s direction that courts should not make “ad hoc exceptions” to the broad abuse of discretion standard applicable in this context, Conkright v. Frommert, 559 U.S. 506, 513, 130 S.Ct. 1640, 176 L.Ed.2d 469 (2010), but it also does damage to our precedent and basic principles of ERISA law. Under the abuse of discretion review applicable to Barton’s claim, Barton must show that the plan administrator’s decision was “(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record.” Salomaa v. Honda Long Term Disability Plan, 642 F.3d 666, 676 (9th Cir.2011). There is no other burden of proof. And even when de novo review is applicable, we have held that only the claimant — not the plan administrator — has the burden of proof. Muniz v. Amec Constr. Mgmt., Inc., 623 F.3d 1290, 1294-95 (9th Cir.2010). I dissent.
I
Under our precedent, when a claimant challenges the denial of benefits under 29 U.S.C. § 1132(a)(1) and the ERISA plan at issue grants discretion to the plan administrator, the district court conducts a bench trial to determine if the plan.administrator abused its discretion. Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955, 962-65 (9th Cir.2006). The scope of evidence considered at such a trial is generally limited to the administrative record. Id. at 970 (“Today, we continue to recognize that, in general, a district court may review only the administrative record when considering whether the plan administrator abused its discretion, but may admit additional evidence on de novo review.”). There are exceptions to the rule, as when the district court needs to consider extrinsic evidence to determine how much weight to give to a claimed conflict of interest on the part of a plan administrator, or when the administrator failed to follow procedural requirements, id. at 970, 972-73, but the majority does not suggest that these exceptions are applicable here.
In reviewing the plan administrator’s decision in light of the administrative record, a court may not “substitute [its] view for that of the factfinder.” Salomaa, 642 F.3d at 676. Rather, the scope of review is limited: the court may consider only whether the plan administrator’s decision was “(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record.” Id. This standard of review applies to the plan administrator’s factual determinations as well as its ultimate decision. Walker v. American Home Shield Long Term Disability Plan, 180 F.3d 1065, 1069-70 (9th Cir.1999). Under deferential review, a district court considers only whether the claimant showed that the plan administrator’s benefit decision was unreasonable, *1071 and the court must uphold the decision so long as it is logical, plausible, and supported by the record, id.; there is no other burden of proof.[1]
Only when a district court reviews a plan administrator’s decision denying benefits under a de novo standard of review does our precedent require a district court to impose the proper burden of proof. Doing so makes sense in this context: instead of deferring to the plan administrator’s decision, the district court must evaluate the evidence de novo, and therefore must determine which party has the burden of establishing each fact required for eligibility under an ERISA plan. Under such de novo review, the burden of proof remains firmly on the claimant. Muniz, 623 F.3d at 1294-95 (“As concluded by other circuit courts which have addressed the question, when the court reviews a plan administrator’s decision under the de novo standard of review, the burden of proof is placed on the claimant.”). And we have rejected the argument that the claimant may shift the burden of proof to the plan administrator. Id. (rejecting the claimant’s argument that once he met the initial burden of proving disability, the burden of proof shifts to the plan to justify its decision to terminate benefits).
II
The district court correctly followed our precedent. It first determined that the plan gave discretion to the administrators. The majority concedes that determination was correct. Maj. op. at 1065. It then reviewed the evidence of conflict of interest and concluded that it would review the plan administrator’s..decisions with a low level of skepticism. The majority does not say this was in error. Id. at 1066. Finally, the court determined that there were no procedural irregularities present. Therefore, the district court correctly limited its review to the administrative record.
The plans at issue here require a claimant to establish, among other things, that: (1) he worked for one or more covered employers, as defined in the plans, (2) for a continuous term of at least ten years. The evidence in the administrative record showed that Barton was employed by various ADT companies, as well as other companies, from 1967 to 1986, but did not show that he had continuous service for ten years with any ADT company, nor that any of the ADT companies were “covered” as required by the Plan. Specifically, documents in the record showed that in 1967, Barton started working at ADT of Maine. From 1967 to 1976, Barton received sporadic wages from ADT of Massachusetts, Mittman Realty Co, Inc.,' Pentate Filtration, Inc., the Marine Reserves, and Ginn-Marvin Moving & Storage Co. In 1982 he started working for ADT Diversified Service, Inc., in New Jersey, where he worked until 1985. In 1985, Barton worked for ADT of Illinois, where he stayed until he resigned on September 11, 1986. His resignation took effect on September 25,1986.
The administrative record also included evidence that the plan administrator had a system to maintain and .update records regarding pension benefit eligibility for employees and had an incentive for keeping accurate records. A declaration from a member of the plan administration committee stated that those records contained no evidence that Barton was a participant in the pension plan or that ADT of Massa *1072 chusetts or ADT of Maine were participating employers. The declaration also set forth the committee’s determination that Barton’s evidence was inconsistent with a claim of continuous , employment by á participating entity with no break in service.
Based on its review of the administrative record, the court made the factual finding that Barton did not establish that he had worked for a ten-year continuous period for a covered employer. This factual finding is not clearly erroneous. Accordingly, the court’s conclusion that the plan administrator’s benefits denial was not illogical, implausible, or without support in inferences that may be drawn from the facts in the record is correct.
Indeed, there is no way to reach a different conclusion under our precedent. Although in Saloma a we concluded that a plan administrator’s decision to deny benefits was illogical, implausible, and without support in the record where virtually all the evidence in the record pointed in the other direction, Salomaa, 642 F.3d at 676, the evidence here is more than adequate to support the plan administrator’s decision. Nor could we reverse the district court’s decision on the ground that the plan administrator abused its discretion because it knew or should have known of additional information that would substantiate Barton’s claim. See, e.g., Hess v. Hartford Life & Accident Ins. Co., 274 F.3d 456, 462-63 (7th Cir.2001). Even if we adopted such a standard, no one has argued that the plan administrator is aware of evidence that would identify Barton’s employers as “covered employers.” Indeed, given ADT’s multiple acquisitions, mergers, and divisions since 1986, it would be unsurprising if the plan lacks records proving that certain ADT entities were not covered during the period from 1967 to 1986.
Nor did ADT have a legal duty to maintain such information. As the majority implicitly acknowledges, no ERISA provision requires a plan administrator to maintain a record of covered companies. Maj. op. at 1067 n. 5. The majority suggests that 29 U.S.C. § 1024(b)(4) illustrates the recordkeeping and disclosure requirements imposed on a plan administrator, Maj. op. at 1066-67, but by its terms it does not require a plan administrator to keep the sorts of records at issue here.[2] The administrative record shows that the plan administrator provided the information required under § 1024(b)(4) to the extent Barton requested it and the majority does not suggest otherwise, see Maj. op. at 1067 n, 5.
Ill
Rather than'follow our ERISA precedent, which requires us to affirm the district court, the majority abandons it entirety-
First, the majority invents a burden-of-proof standard (along with a burden-shifting approach) that is in direct conflict with our abuse of discretion standard. The majority holds that: “Where a claimant, through documentary or other objective evidencé, has made a prima facie case that he is entitled to a pension but has no means except for information in the defendant’s control to establish that his work was for a ‘covered employer’ and of sufficient duration, the burden then shifts to the defendant to produce such information.” Maj. op. at 1069. Under this rule, *1073 if Barton has established a “prima facie case that he is entitled to a pension” (and the majority does not specify what this means), the burden shifts to the plan administrator to prove that the claimant’s work was not “for a covered employer.”[3] If the plan administrator does not have information relevant to the claimant’s work history, this may mean (again, the majority is unclear) that the claimant prevails, and the district court must invalidate the plan administrator’s denial of benefits even if the plan administrator’s decision was not illogical, implausible, or without support in the record. ' This is directly contrary to our deferential standard, Abatie, 458 F.3d at 965, and contrary to the Supreme Court’s direction that courts should not make “ad hoc exceptions” to the abuse of discretion standard, Conkright, 559 U.S. at 513, 130 S.Ct. 1640.
Here, for instance, if the district court on remand determined that Barton has made a.“prima facie case that he is entitled to a pension,” and the plan administrator cannot introduce any extrinsic evidence establishing that ADT of Massachusetts, ADT of Maine, or ADT of Illinois were not “covered employers” as defined in the plans,[4] the district court would have to credit Barton’s allegations that these companies are covered employers, which could compel the conclusion that Barton is entitled to benefits under the plan.[5]. But such a result would be directly contrary to our and Supreme Court case law, see Conkright, 559 U.S. at 513, 130 S.Ct. 1640; Abatie, 458 F.3d at 965, because it would require the plan administrator to provide benefits to Barton even .though the plan administrator did not abuse its discretion in determining that Barton did not work for covered employers for ten years of continuous service.
The majority argues that its new burden-shifting rule does not require the plan administrator to carry the burden of producing “records listing entities not covered .by their pension plans,” but . rather requires the plan administrator to “reveal which companies did in fact participate in their plans.” Maj. op. at 1068 n. 7. According to the majority, plan administrators must know this information in order to “fulfill their fiduciary duty to only distribute pension funds to qualified individuals.” Id. But the plan administrator here elected to fulfill its fiduciary duty by maintaining and updating a record of past and present employees who are entitled to pensions, rather than by listing covered companies. The majority provides no explanation as to why this approach breached the plan administrator’s fiduciary duty or what authority required the plan administrator to maintain a completé list of covered companies in order to comply with the majority’s unprecedented new rule.
Moreover, assuming that administrators of multi-employer plans like this one (ADT *1074 instituted its first plan on April 1, 1913) frequently lack information about which historical companies are “covered” as defined in the plan, the majority’s new rule does not just shift a burden, but as a practical matter, could make the claimant eligible for benefits whenever the historical information is scanty or unavailable. Putting the “risk of insufficient records” on the ERISA plan, as required by the majority, enhances the risk that uninsured claimants will draw funds away from the legitimate beneficiaries. That risk is in derogation of one of ERISA’s core policies: to protect the “soundness and stability of plans with respect to adequate funds to pay promised benefits.” 29 U.S.C. § 1001(a); see also Boyd v. Bert Bell/Pete Rozelle NFL Players Ret. Plan, 410 F.3d 1173, 1178 (9th Cir.2005) (holding that fiduciaries of benefit plans are “obligated to guard the assets of the Plan from improper claims”) (internal quotation marks and alteration omitted).
Lacking any support for its new rule in our ERISA case law, the majority is forced to justify its rule by reference to cases addressing inapposite issues. See Brick Masons Pension Trust v. Industrial Fence & Supply, Inc., 839 F.2d 1333, 1337-39 (9th Cir.1988); see also Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 686-87, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946).
In Brick Masons, a masonry company entered into a contract to make contributions to multi-employer welfare plans based on hours worked by covered employees. 839 F.2d at 1335. The welfare plans proved that during the relevant time period, the company had breached the contract by using covered employees to perform covered work and failing to make the required contributions, which resulted in damage to the welfare plans. Id. Although there was only limited evidence as to the extent of the covered work (and hence, limited evidence of the amount of the missing contributions), the welfare plans proved that this data was unavailable because the company had violated a statutory requirement to keep adequate records of its employees’ hours. Id. at 1338. We held that because the welfare plans had proved “the fact of damage” and had also proved that the company failed to keep statutorily required records, the burden shifted to the company to come forward with evidence that would show the extent of damages. Id. at 1338-39. Because the company did not have records regarding the amount of covered work performed by the covered employees, this in effect required the company to pay the full amount estimated by the welfare plans. Id.
The majority also cites Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 686-87, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946), which involved a suit by employees under the Fair Labor Standards Act claiming that they were deprived of overtime compensation. Id. at 684, 66 S.Ct. 1187. The Court held that where an employee proved that he “has in fact performed work for which he was improperly compensated,” and “the amount and extent of that work,” but the employer violated its statutory duty to keep adequate and accurate records, the burden shifted to the employer to disprove the employees’ estimate of the work performed. Id. at 686-88, 66 S.Ct. 1187.
Brick Masons and Mt. Clemens have nothing to do with the question presented here, whether a plan administrator abused its discretion in denying a claimant’s demand for benefits. The district courts in Brick Masons and Mt. Clemens were not considering whether a plan administrator’s decision was illogical, implausible, or without support in the record, but rather were conducting a de novo review of the amount *1075 of damages to which claimants were entitled. The courts shifted the burden to the defendant to show the extent of damages only after the plaintiffs had both: (1) successfully proven all elements of' their claims; and (2) established .that the defendant’s violation of a statutory requirement to maintain necessary records precluded them from proving the precise amount of damages caused by the defendant. Here, by contrast, Barton has not successfully proven any element of his claim: The question is not the “amount of damages” owed to Barton, but rather whether he is owed anything at all. Moreover, Barton has not pointed to any violation of a statutory recordkeeping requirement. Even if the majority’s Brick Masons theory were otherwise applicable in the context of abuse of discretion review, the lack of any statutory violation would preclude a court from shifting the burden of proof. See Motion Picture Indus. Pension & Health Plans v. N.T. Audio Visual Supply, Inc., 259 F.3d 1063, 1066-67 (9th Cir.2001) (noting that the “first threshold burden” for switching the burden of proof under Brick Masons is proving that the plan administrator “failed to keep adequate records” under ERISA).
IV
In short, the majority’s ad hoc rule designed to help Barton in this case • is a disaster. The majority’s requirement that the district court allocate a burden of proof when it is supposed to be reviewing a plan administrator’s decision for abuse of discretion makes no sense and is contrary to our case law. And the rule itself, which verges on the incomprehensible, will defy district courts’ efforts to apply it. Given that this rule was apparently developed to help a single claimant, one can only hope that this strange rule will be confined to the limited facts of this case. I dissent,

. Different rules may apply when there is ..evidence that "a plan administrator's self-interest caused a breach of the administrator's fiduciary obligations to the claimant,” see Tremain v. Bell Indus., Inc., 196 F.3d 970, 976 (9th Cir.1999), but this case does .not give rise to such an issue, and the majority does not hold otherwise.

. 29 U.S.C. § 1024(b)(4) provides that "[t]he administrator shall, upon written request- of any participant or beneficiary, furnish a copy of the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated.”

. Of course, such a burden-shifting approach is contrary to our burden of proof standard even under de novo review, see Muniz, 623 F.3d at 1294-95, let alone on abuse of discretion review, where the court does not assign a burden of proof at all. ■

. The majority’s burden-shifting rale presumably contemplates that the plan administrator will have an opportunity to introduce extrinsic evidence on this issue, which is also contrary to our precedent. Abatie, 458 F.3d at 970, 972-73.

.The majority is unclear whether a determination that some of Barton's former employers must be deemed to be “covered employers” under a burden-shifting approach also compels the conclusion that Barton is per se entitled to benefits. Since the plan requires Barton to have engaged in ten years of continuous service with a covered employer, such a ruling would directly contradict the terms of the plans.