30 F.3d 692
 MICHIGAN LABORERS' HEALTH CARE FUND; Michigan Laborers'
Vacation Fund; Michigan Laborers' Training Fund; Michigan
Laborers' Industry Advancement Fund; and State of Michigan
Laborers' District Council Pension Fund, Plaintiffs-Appellees,
v.
GRIMALDI CONCRETE, INC., and Rocco's Concrete Company,
Defendants-Appellants.
 No. 93-1494.
 United States Court of Appeals,
Sixth Circuit.
 Argued May 2, 1994.
Decided July 26, 1994.
 
 John G. Adam (argued and briefed), Christopher P. Legghio, Ronald C. Engler, Miller, Cohen, Martens & Ice, Southfield, MI, for plaintiffs-appellees.
 John B. Owdzie (briefed), John R. Carney (argued), Livonia, MI, for defendants-appellants.
 Before MARTIN, NORRIS, and DAUGHTREY, Circuit Judges.
 BOYCE F. MARTIN, Jr., Circuit Judge.
 
 
 1
 Grimaldi Concrete, Inc. and Rocco's Concrete Company appeal the district court's judgment in favor of the union pension funds in this ERISA action for unpaid fringe benefit contributions under 29 U.S.C. Sec. 1059. The district court found that the companies failed to maintain adequate records regarding the contributions due for "covered" work under a collective bargaining agreement with plaintiffs. The court also held the companies liable for contributions on all work performed during the period that the agreement was in force. We affirm.
 
 
 2
 * Nearly all of the facts of the case are contained in three pre-trial stipulations between the parties, and the remaining facts not in dispute. The Michigan Laborers' Health Care Fund, Vacation Fund, and Training Fund, as well as the State of Michigan District Council Pension Fund ("Funds") are multi-employer trust funds established to provide medical, hospital, pension, vacation, and other benefits to employees of the multi-employer group under Section 302(c)(5) of the Labor Management Relations Act, 29 U.S.C. Sec. 186(c)(5), and the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. Secs. 1001-1461. The Funds receive fringe benefit contributions from participating employers pursuant to collective bargaining agreements between the employers and local chapters of the Laborers' International Union.
 
 
 3
 On October 11, 1983, the president of Grimaldi Concrete signed an independent contractor's collective bargaining agreement with the Laborers' International Union of North America, Local 1191. This agreement bound Grimaldi Concrete to the terms and conditions of a second collective bargaining agreement, covering the period from 1983 to 1986, between the Michigan Road Builders' Association and the State of Michigan Laborers' District Council of the Laborers' International Union of North America. The agreement signed by Rocco Grimaldi contained an automatic renewal provision, which bound Grimaldi Concrete to the terms of a subsequent 1986-1989 collective bargaining agreement between the Union and the Road Builders' Association unless Grimaldi gave written notice to the Union at least sixty days prior to the termination date of the 1983-1986 agreement. Grimaldi Concrete failed to notify the Union, and the company subsequently changed its name to "Rocco's Concrete Company" in an unsuccessful attempt to avoid the consequences of the renewal provision, of which it allegedly had been previously unaware. The parties now agree that the 1986-1989 collective bargaining agreement covers the current dispute.
 
 
 4
 Under the 1986-1989 agreement, Grimaldi Concrete was required to make payments to each of the Funds for employees performing "covered" concrete-pouring work. The parties have stipulated that driveway and sidewalk work was covered by the agreement, and have also stipulated that contributions were not required for other concrete-pouring work. Grimaldi Concrete admits that it employed eleven laborers during the period covered by the 1986-1989 agreement, and that these laborers performed some work on driveways and sidewalks.
 
 
 5
 In 1988, the Funds obtained a $23,308.81 default judgment against Grimaldi Concrete for unpaid amounts involving similar covered work for the 1983-1986 period. With respect to the subsequent, 1986-1989 agreement, it is undisputed that Grimaldi Concrete failed to submit monthly fringe benefit reports to the Funds, and made no contributions to the Funds. As Grimaldi points out, however, from mid-1984 to September 20, 1992, the date the present action was filed, the Funds made no requests for reports or contributions other than in the 1988 action.
 
 
 6
 After the 1986-1989 agreement expired, the Funds audited Grimaldi Concrete's payroll records. The audit established that Grimaldi's eleven laborers worked a total of approximately 14,574 hours during this period. The parties have stipulated that if all of this time were spent performing work covered by the agreement, the deficit in contributions, including interest, would be $64,811.80. Grimaldi Concrete produced invoice receipts for 19.4 percent of the total work performed during this period, measured as a percentage of $2,350,181.40 in gross receipts. The receipts show a total of 346,626.32 square feet of concrete work, of which 39,034.32 feet, or 11.3 percent, was work covered under the agreement. Grimaldi Concrete has no records for the remaining 80.6 percent of total work performed in 1986-1989, nor does it have additional records for the 19.4 percent of work described showing which laborers performed covered work, or how many hours were spent performing covered work. Because of the lack of records, the Fund auditors were unable to determine the amount of work for which contributions were due. They concluded that Grimaldi Concrete owed contributions for all work performed during the agreement period. Grimaldi Concrete disputed this conclusion, and the Funds filed suit to recover the unpaid contributions provided for in the agreement.
 
 
 7
 The district court found that Grimaldi Concrete clearly violated ERISA by failing to maintain adequate records as required by 29 U.S.C. Sec. 1059(a)(1), which provides that "[e]very employer shall ... maintain records with respect to each of his employees sufficient to determine the benefits due or which may become due to such employees." The court noted that the invoices supplied by Grimaldi did not specify the hours spent performing covered work, and that they were therefore inadequate to support a calculation of benefits owed under the collective bargaining agreement. The court also referred to the 1988 default judgment, which, in the opinion of the district court, should have put Grimaldi on notice for the remainder of the 1986-89 agreement period with respect to the statutory record-keeping requirements. Finally, the court stated that "the penalty must fall upon the person who had the legal responsibility to maintain those records," and concluded that, because it could not calculate the amount owed under the agreement on the basis of the incomplete invoice receipts, Grimaldi Concrete was liable for contributions for all hours worked, in the amount of $64,811.80, plus attorney's fees and costs. This appeal by Grimaldi Concrete timely followed.
 
 II
 
 8
 Grimaldi Concrete asserts that the district court erred in ruling that the company failed to maintain adequate records as required by 29 U.S.C. Sec. 1059. Section 1059 provides, in pertinent part, as follows:
 
 
 9
 (a)(1) Except as provided by paragraph (2) every employer shall, in accordance with regulations prescribed by the Secretary, maintain records with respect to each of his employees sufficient to determine the benefits due or which may become due to such employees. The plan administrator shall make a report, in such manner and at such time as may be provided in regulations prescribed by the Secretary, to each employee who is a participant under the plan ...
 
 
 10
 . . . . .
 
 
 11
 (2) If more than one employer adopts a plan, each such employer shall, in accordance with regulations prescribed by the Secretary, furnish to the plan administrator the information necessary for the administrator to maintain the records and make the reports required by paragraph (1). Such administrator shall maintain the records and, to the extent provided under regulations prescribed by the Secretary, make the reports, required by paragraph (1).
 
 
 12
 (b) If any person who is required, under subsection (a) of this section, to furnish information or maintain records for any plan year fails to comply with such requirement, he shall pay to the Secretary a civil penalty of $10 for each employee with respect to whom such failure occurs, unless it is shown that such failure is due to reasonable cause.
 
 
 13
 29 U.S.C. Sec. 1059. Grimaldi Concrete concedes that it is an employer within the meaning of this section.
 
 
 14
 According to both the plain language of the statute and the few court decisions that have interpreted it, Section 1059 imposes a clear duty on an employer to maintain adequate records. In our sole published opinion dealing with this section, we stated that Section 1059 imposes "a duty of responsibility and record keeping on employers with respect to all employees who are participants in an employee benefit plan." Central States Pension Fund v. Central Transport, Inc., 698 F.2d 802, 805 (6th Cir. 1983), rev'd on other grounds, 472 U.S. 559, 105 S.Ct. 2833, 86 L.Ed.2d 447 (1985). This was reiterated in the reversal on the merits, in which the Supreme Court stated that the section "requir[es] employers to maintain records on employees and to furnish to benefit plans the information needed for the plans' fulfillment of their reporting duties." Central States Pension Fund v. Central Transport, Inc., 472 U.S. at 573, 105 S.Ct. at 2841-42. The Ninth and Eleventh Circuits have made similar declarations. Operating Engineers Pension Trusts v. B & E Backhoe, 911 F.2d 1347, 1354 (9th Cir.1990); Brick Masons Pension Trust v. Industrial Fence and Supply, 839 F.2d 1333, 1337-38 (9th Cir.1988); Combs v. King, 764 F.2d 818, 823 (11th Cir.1985).
 
 
 15
 In Operating Engineers and Brick Masons, the Ninth Circuit relied on the Eleventh Circuit's disposition in Combs in holding that an employer's failure to maintain adequate records shifts the burden to the employer to prove that the work performed was covered or not covered. Operating Engineers, 911 F.2d at 1354; Brick Masons, 839 F.2d at 1337-39; Combs, 764 F.2d at 826 (an employer's failure to maintain records under ERISA shifts the burden "to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the [plaintiff's] evidence" in order to avoid a finding that the employer violated its statutory record-keeping duty) (quoting Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687-88, 66 S.Ct. 1187, 1192-93, 90 L.Ed. 1515 (1946) (emphasis added) (applying this approach in a Fair Labor Standards Act context)). We agree with this sensible approach.
 
 
 16
 Here, Grimaldi Concrete provided no records at all with respect to 80% of the work performed under the collective bargaining agreement, and provided incomplete records with respect to the remaining 20%. We believe, accordingly, that Grimaldi Concrete failed to maintain adequate records as required by Section 1059. The burden thus shifted to Grimaldi to prove what work was covered and what was not covered.
 
 
 17
 Grimaldi Concrete claims that the invoices it produced for 20% of its work, and the uncontradicted testimony of Rocco Grimaldi that covered work took roughly the same amount of time to complete as work not covered by the agreement, were sufficient to show that 11% of its total work was covered under the collective bargaining agreement. The collective bargaining agreement, however, requires a calculation of benefits owed based on the precise number of hours worked by properly classified laborers on covered projects.[1] The information produced by Grimaldi Concrete clearly does not set forth the hours worked on covered projects, nor does it specify which laborers were working on those projects. In addition, it would be an exercise in pure speculation to attempt to ascertain from this information, and the limited inferences that can be drawn from it, the portion of the remaining 80% of work for which no records at all are available that constituted covered work. Grimaldi Concrete's information is thus insufficient to meet its burden of proof on the amount of covered work performed. See Operating Engineers, 911 F.2d at 1354 (employer does not meet burden of proof if it does not come forward with evidence of the number of hours spent performing covered work) (citing Brick Masons, 839 F.2d at 1338-39); see also Combs, 764 F.2d at 825 (same).
 
 
 18
 Nevertheless, Grimaldi Concrete argues, in light of the Funds' failure to request regular reports and contributions, and the elapsed time between the period covered by the agreement and the filing of this lawsuit, it should not be required to have kept detailed records. However, Section 1059 is couched in mandatory language, and does not require that plan administrators submit regular requests for reports and contributions. 29 U.S.C. Secs. 1059, 1059(a)(1) (employer "shall ... maintain records"). Given the stipulation between the parties that Grimaldi Concrete is bound by the 1986-1989 agreement, the company's other contentions regarding Rocco Grimaldi's inability to understand written English, his resultant belief that he was not bound by the agreement after 1983, and the import of the 1988 default judgment are not relevant to the issues before us.
 
 
 19
 We have not addressed the issue of the appropriate penalty for an employer who fails to maintain records. In Brick Masons, on facts almost indistinguishable from those here, the Ninth Circuit held that
 
 
 20
 because [the employer] violated its statutory duty under ERISA to keep accurate records and failed otherwise to come forward with any evidence of the extent of covered work performed by the [employees], the Trust Funds are entitled as a matter of law to recover contributions for all hours worked by these [employees] during the quarter in which they were shown to have performed some covered work for [the employer].
 
 
 21
 Brick Masons, 839 F.2d at 1339 (emphasis added). In so holding, the Ninth Circuit relied on Combs, as well as the Supreme Court's statement in Anderson that an "employer cannot be heard to complain that the damages lack the precision of measurement that would be possible had he kept records in accordance" with the Act. Anderson, 328 U.S. at 688, 66 S.Ct. at 1192-93; Brick Masons, 839 F.2d at 1338-39. In Anderson, the Supreme Court also emphasized that the fact of damage was certain, as in the present case, and that an employer should not be allowed to benefit from the violation of a statutory duty. Anderson, 328 U.S. at 688, 66 S.Ct. at 1192-93. As the Ninth Circuit observed, "[a]n employer cannot escape liability for his failure to pay his employees the wages and benefits due to them under the law by hiding behind his failure to keep records as statutorily required." Brick Masons, 839 F.2d at 1338.
 
 
 22
 As previously noted, the benefits calculations under the collective bargaining agreement depend on knowledge of the specific number of hours worked by each employee on projects covered under the collective bargaining agreement. Given these calculation constraints, and Grimaldi Concrete's violation of its statutory duty, it is impossible to determine with any precision the amount of contributions due to the Funds. We agree with the Ninth Circuit that, under these circumstances, an employer is liable for contributions on all hours worked during a period in which it has been demonstrated that some covered work was performed. Accordingly, the district court properly held Grimaldi Concrete liable to the Funds for $64,811.10, the full amount set forth in the stipulation.
 
 
 23
 Grimaldi Concrete's final argument, that this disposition is contrary to the expressed intent of one of the stipulations between the parties, is also without merit. The stipulation in question provides that "contributions need not be made to plaintiffs under the collective bargaining agreement for [uncovered] work." In order for this provision to have its intended effect, of course, there must be sufficient evidence to show how much work is covered, and how much is not covered by the agreement. Grimaldi Concrete's failure to maintain adequate records, and its failure to provide sufficient evidence of the hours worked by its employees on covered projects, ensured that an accurate calculation of owed benefits could not be made. As we have already observed, under the Supreme Court's decision in Anderson, an employer should not be allowed to benefit from the violation of its statutory record-keeping duty. Thus, the general intent of the stipulation regarding contributions and non-covered work notwithstanding, Grimaldi Concrete is liable for fringe benefit contributions for all hours worked under the collective bargaining agreement, in addition to the civil penalty provided for in 29 U.S.C. Sec. 1059(b).
 
 III
 
 24
 For the foregoing reasons, the judgment of the district court is affirmed.
 
 
 
 [1]
 For example, Article V of the agreement sets forth classifications regarding worker eligibility for handling certain equipment and projects, and Article VI states as follows:
 HEALTH CARE FUND
 
 
 [2]
 (a) The Contractors agree to pay into the Michigan Laborers' Health Care Fund one dollar and fifteen cents ($1.15) per hour paid each employee doing the work covered by this Agreement
 Other provisions in Article VI similarly provide for payment into the remainder of the Funds.