VERMONT TEDDY BEAR COMPANY, INC., a New York Corporation, Plaintiff–Appellee,

v.

1–800 BEARGRAM COMPANY, Staten Island Supply Company, Inc., Adirondack Bear Company, Defendants,

Robert M. Schwimer, an individual, Defendant–Appellant.

Docket No. 03–7030.

United States Court of Appeals, Second Circuit.

Argued: April 23, 2004.

Decided: July 1, 2004.

Robert M. Schwimer, Pro Se, Staten Island, NY, for Defendant–Appellant.

H. Jay Spiegel, H. Jay Spiegel & Associates, Mount Vernon, VA (Patrick C. Dunican, Jr. and Jennifer A. Endress, on the brief), for Plaintiff–Appellee.

Before: McLAUGHLIN and SACK, Circuit Judges, and GERSHON, District Judge.[*]

Judge GERSHON dissents in a separate opinion.

McLAUGHLIN, Circuit Judge.

Robert M. Schwimer appeals an order granting a "default" summary judgment to the well-known Vermont Teddy Bear Company ("VTB") in the United States District Court for the Eastern District of New York (Korman, *J.*).

After learning that Schwimer was using the mark "BEARGRAM" in the marketing of his products, VTB brought various intellectual property and related state law tort claims against him. VTB moved for summary judgment on its federal intellectual property claims.

Despite receiving notice of the manner in which he could respond, Schwimer failed to oppose the motion. The district court granted VTB's summary judgment motion simply by endorsing the notice of motion and adopting, with slight modifications, VTB's proposed order as the judgment. The order contained no reasoning.

■ We write to clarify the procedure to be followed when a motion for summary judgment is unopposed. We hold that Fed.R.Civ.P. 56, governing summary judgment motions, does not embrace default judgment principles. Even when a motion for summary judgment is unopposed, the district court is not relieved of its duty to decide whether the movant is entitled to judgment as a matter of law.

## BACKGROUND

VTB sells widely publicized stuffed teddy bears packaged with personalized greetings. VTB has used the mark "BEAR–GRAM" in its business since 1985, and has obtained federal registration of its mark for "message delivery services accompanied by a stuffed animal." In 1994, VTB learned that Schwimer had begun to use the designation "BEARGRAM" and the telephone number "1–800–BEAR-GRAM" in its marketing of stuffed animals, including teddy bears. VTB subsequently became aware that Schwimer had registered the domain names "BEAR-GRAM.COM," "BEARGRAM.ORG," and "BEARGRAM.NET."

Several years and numerous cease-and-desist letters later, in November 2000, VTB sued Schwimer and his various companies 1–800–BEARGRAM Company, Adi-

[*] The Honorable Nina Gershon, United States District Judge for the Eastern District of New York, sitting by designation.

rondack Bear Company, and Staten Island Supply Company ("SISCO") (collectively, "defendants") for: (1) trademark infringement, in violation of 15 U.S.C. § 1114; (2) unfair competition, in violation of 15 U.S.C. § 1125(a); (3) dilution of a famous mark, in violation of 15 U.S.C. § 1125(c); (4) cybersquatting, in violation of the AntiCybersquatting Consumer Protection Act ("ACPA"), Pub.L. No. 106–113, 113 Stat. 1501 (1999) (codified at 15 U.S.C. § 1125(d)); and (5) tortious interference with prospective economic advantage. VTB claimed that its allegedly famous mark, "BEAR–GRAM," was infringed by defendants' designation "BEARGRAM," the telephone number "1–800–BEAR-GRAM," and the websites "BEAR-GRAM.COM," "BEARGRAM.ORG," and "BEARGRAM.NET."

The defendants totally failed to respond to VTB's complaint, and default judgment was entered against them by the district court. They soon moved to vacate the default and to serve an answer. The court granted defendants' motion. After answering the complaint, Schwimer dismissed his counsel, and the court instructed Schwimer to obtain counsel, at least for the corporate defendant.

Notwithstanding this warning, Schwimer, alone and *pro se*, appeared before the court. Schwimer admitted that SISCO, which he substantially owned and operated, did business as the other co-defendant companies, 1–800–BEARGRAM Company and Adirondack Bear Company. A default judgment was subsequently entered against SISCO due to Schwimer's failure to retain counsel for the corporate defendant.

In August 2002, after completing discovery, plaintiff, VTB, announced that · it would soon move for summary judgment. The court explained to Schwimer in great detail his obligation to respond to a sum-

mary judgment motion; it set November 15, 2002 as the due date for his opposition brief.

VTB moved for summary judgment and attached instructions to Schwimer on how to oppose the motion. In the motion, VTB waived the tortious interference claim, but sought relief on its four remaining claims: (1) trademark infringement; (2) unfair competition; (3) dilution of a famous mark; and (4) cybersquatting.

VTB also attached to its summary judgment motion a proposed order setting forth, *inter alia,* the following relief: (1) *a permanent injunction* restraining the defendants from: (a) using the mark "BEAR–GRAM" or any confusingly similar mark; (b) engaging in any conduct creating a likelihood of injury to VTB; and (c) committing any unfair trade practices towards VTB; (2) *an award* of statutory damages under the ACPA for $200,000, representing the maximum statutory award for each of the challenged domain names, "BEARGRAM.ORG" and "BEAR-GRAM.NET"; (3) *reimbursement* for litigation expenses; and (4) *a compelled conveyance* of the telephone number "1–800–BEARGRAM" to VTB.

Schwimer failed to oppose the summary judgment motion by November 15, 2002 (or at any time thereafter). On December 3,. the district court granted VTB's summary judgment motion by endorsement on the notice of motion, without providing any reasoning or discussion of the claims. Moreover, the court adopted the proposed order attached to VTB's summary judgment motion as its final judgment, modifying the amount of damages awarded under the ACPA from $200,000 to $150,000.

Schwimer now appeals.

## DISCUSSION

In his two-page *pro se* appellate "brief," Schwimer implies that the court

erred in granting summary judgment against him because his failure to oppose the motion was due to his sickness and to his ignorance of the due date. We conclude that there was error, but it had nothing to do with illness or ignorance. For the reasons below, we hold that the failure to oppose a motion for summary judgment alone does not justify the granting of summary judgment. Instead, the district court must still assess whether the moving party has fulfilled its burden of demonstrating that there is no genuine issue of material fact and its entitlement to judgment as a matter of law.

We review *de novo* the district court's grant of summary judgment. *Amaker v. Foley,* 274 F.3d 677, 680 (2d Cir.2001). Summary judgment is appropriate when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). It is the movant's burden to show that no genuine factual dispute exists. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). In reviewing a summary judgment motion, we must resolve all ambiguities and draw all reasonable inferences in the non-movant's favor. *See Giannullo v. City of N.Y.,* 322 F.3d 139, 140 (2d Cir.2003).

■ Federal Rule of Civil Procedure 56 provides that if a non-moving party fails to oppose a summary judgment motion, then "summary judgment, *if appropriate,* shall be entered against" him. Fed.R.Civ.P. 56(e) (emphasis added). This Court has made clear, however, that where the non-moving party "chooses the perilous path of failing to submit a response to a summary judgment motion, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no

material issue of fact remains for trial." *Amaker,* 274 F.3d at 681. If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then "summary judgment must be denied *even if no opposing evidentiary matter is presented.*" *Id.* (internal quotation marks omitted); *Giannullo,* 322 F.3d at 141 (noting that the "non-movant is not required to rebut an insufficient showing"). Moreover, in determining whether the moving party has met this burden of showing the absence of a genuine issue for trial, the district court may not rely solely on the statement of undisputed facts contained in the moving party's Rule 56.1 statement. It must be satisfied that the citation to evidence in the record supports the assertion. *Giannullo,* 322 F.3d at 143 n. 5 (stating that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

■ An unopposed summary judgment motion may also fail where the undisputed facts fail to " 'show that the moving party is entitled to judgment as a matter of law.' " *Champion v. Artuz,* 76 F.3d 483, 486 (2d Cir.1996) (*per curiam* ) (quoting Fed.R.Civ.P. 56(c)). Where the order granting summary judgment is insufficiently clear to permit this Court to determine whether the grounds for granting the motion are valid, remand is appropriate. *See Miranda v. Bennett,* 322 F.3d 171, 175 (2d Cir.2003); *Amaker,* 274 F.3d at 681 n. 1 (vacating and remanding the judgment of the district court that granted an unopposed summary judgment motion is singularly appropriate "as the district court is in a far better position to conduct a summary judgment analysis in the first instance").

*Amaker* is on all fours with this case. After receiving defendants' summary judg-

ment motion, the district court in *Amaker* told plaintiff's counsel that it intended to grant the motion if plaintiff failed to submit an opposition. *Amaker*, 274 F.3d at 679–80. When plaintiff failed to respond, the district court granted summary judgment in a cursory order implying that plaintiff's default was the sole basis for the dismissal. *Id.* at 680. On review, this Court vacated and remanded, holding that "[t]he district court granted summary judgment solely for failure to file opposing papers and did not, as required, assess whether the defendants had met their burden to demonstrate that summary judgment was appropriate." *Id.* at 681.

■ As in *Amaker*, the district court in this case granted summary judgment without giving any reasons. Although it is not as clear here that the district court granted summary judgment based only on Schwimer's default, we are nevertheless unable to review the court's decision in any meaningful way.

Here, the district court granted VTB's unopposed summary judgment motion by endorsing the notice of motion and adopting, with few modifications, VTB's proposed order. The district court did not provide any reasoning for its decision, which contravenes this Court's warning to district courts to avoid the "imprudence of wholesale adoption of a party's position." *Miranda*, 322 F.3d at 177 (noting that the "very nature of advocacy creates a need for the court to be wary of wholesale adoption of a party's proffers").

It is not without significance that VTB moved for summary judgment on four claims, each of which is decided under a multi-factor balancing test. There is no evidence in the record, however, that the court weighed the factors entitling VTB to relief on any of the four claims.

To discuss but one claim, it is unclear, for example, whether VTB was entitled to judgment as a matter of law on its claim against Schwimer for a violation of the ACPA. *See* 15 U.S.C. § 1125(d). Under the ACPA, damages are available only if the defendant acted in bad faith in registering or in using a domain name that is confusingly similar to another's famous or distinctive mark. *See id.* Although the ACPA lists nine factors that courts may consider as evidence of bad faith, in its summary judgment motion VTB demonstrated only two factors that weighed in its favor, while conceding that at least three tilted in Schwimer's favor. The district court could conceivably have relied on other indicia of bad faith to find Schwimer liable under the ACPA, *see Sporty's Farm LLC v. Sportsman's Mkt., Inc.*, 202 F.3d 489, 499 (2d Cir.2000), but its failure to provide any reasons leaves this Court " 'deprived of ... helpful guidance' " in reviewing the decision. *See Miranda*, 322 F.3d at 175 (quoting *United States v. Marine Bancorporation, Inc.*, 418 U.S. 602, 616 n. 13, 94 S.Ct. 2856, 41 L.Ed.2d 978 (1974)).

The district court's award of $150,000 in statutory damages under the ACPA without analysis is also troubling because the law is somewhat unsettled. Under the ACPA, a plaintiff may elect to recover "an award of statutory damages in the amount of not less than $1,000 and not more than $100,000 per domain name." 15 U.S.C. § 1117(d). However, we have previously held that monetary damages are not available where the challenged domain name was registered prior to ACPA's date of enactment. *See Sporty's Farm*, 202 F.3d at 499 n. 14, 500. Recent cases in other circuits have distinguished our decision in *Sporty's Farm*, finding that damages *are* available under the ACPA where a domain name was registered prior to the ACPA's enactment but where use of the name continued thereafter. *See Ford Motor Co. v.*

*Catalanotte*, 342 F.3d 543, 547–48 (6th Cir. 2003); *E & J Gallo Winery v. Spider Webs Ltd.*, 286 F.3d 270, 277 (5th Cir.2002). The challenged domain names in this case were registered prior to the ACPA's enactment, yet the court awarded statutory damages. Because this Court has not resolved whether *Sporty's Farm* permits damages in this situation, the district court's summary judgment order should have articulated the grounds for its decision.

Federal Rule of Civil Procedure 55 is the basic procedure to be followed when there is a default in the course of litigation. And it tracks the ancient common law axiom that a default is an admission of all well-pleaded allegations against the defaulting party. *See generally* B. Finberg, Annotation, *Necessity of Taking Proof as to Liability Against Defaulting Defendant*, 8 A.L.R.3d 1070 (1966). Other default provisions embrace that same philosophy. *See, e.g.*, Fed.R.Civ.P. 4(a) (failure to appear and defend in response to a summons "will result in a judgment by default against the defendant for the relief demanded in the complaint"); *cf.* Fed. R.Civ.P. 16(f) (failure to attend pretrial conference); Fed.R.Civ.P. 37(b)(2)(C) (failure to obey discovery orders).

Motions for summary judgment, however, lack these ancient common law roots. *See generally* John A. Bauman, *The Evolution of the Summary Judgment Procedure: An Essay Commemorating the Centennial Anniversary of Keating's Act*, 31 Ind. L.J. 329 (1956). They are governed by Rule 56 under which the failure to respond to the motion does not alone discharge the burdens imposed on a moving party. Under Rule 56(c), in addition to showing the absence of a genuine issue of material fact, the moving party must show that he is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Although the failure to respond may allow the district court to accept the movant's factual assertions as true, *see* Local Civ. R. 56.2, the moving party must still establish that the undisputed facts entitle him to "a judgment as a matter of law," *see Champion*, 76 F.3d at 486. Accordingly, we emphasize that courts, "in considering a motion for summary judgment, must review the motion, even if unopposed, and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law." *Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 416 (4th Cir.1993).

We note too that Local Civil Rule 56.2 of the Southern and Eastern Districts of New York, which prescribes the notice to be provided to *pro se* litigants opposing summary judgment, is consistent with our holding. The notice must advise *pro se* litigants who oppose summary judgment that "[t]he claims you assert in your complaint *may* be dismissed without a trial if you do not respond to this motion." *Id.* (emphasis added). This language does not embody a common law default principle, and to the extent that the provision might be construed to do so, it is axiomatic that the Federal Rules of Civil Procedure trump inconsistent interpretations of local rules. *See* 28 U.S.C. § 2071(a) (mandating that court rules remain consistent with general rules of practice and procedure); Fed.R.Civ.P. 83 (same); *Jaroma v. Massey*, 873 F.2d 17, 20 (1st Cir.1989) (noting that "a district court cannot provide by local rule that a motion for summary judgment will be automatically granted when the opposing party fails to respond").

Our holding is also consistent with the law of our sister circuits. *See, e.g.*, *Jaroma*, 873 F.2d at 20 (holding that "the district court cannot grant a motion for summary judgment merely for lack of any response by the opposing party, since the district court must review the motion and the supporting papers to determine wheth-

er they establish the absence of a genuine issue of material fact"); *Anchorage Assocs. v. Virgin Islands Bd. of Tax Review,* 922 F.2d 168, 176 (3d Cir.1990) (concluding that the district court could not enter summary judgment on the basis of defendant's failure to respond without determining whether plaintiff was entitled to judgment as a matter of law); *John v. Louisiana,* 757 F.2d 698, 709 (5th Cir.1985) (holding that "summary judgment cannot be supported solely on the ground that [plaintiff] failed to respond to defendants' motion for summary judgment"); *Kinder v. Carson,* 127 F.R.D. 543, 546 (S.D.Fla.1989) ("[T]he granting of summary judgment by default is a disfavored sanction which, in this Court's view, is plainly inconsistent with Rule 56.").

We in no way mean to condone the cavalier way in which the defendant repeatedly failed to act in this protracted litigation. In failing to oppose summary judgment, defendant has chosen the risky and imprudent path of relying solely on VTB's failure to meet its burden of production. Having already defaulted once, defendant should beware of possible sanctions available to the district court for his failure to comply with a scheduling order. *See* Fed.R.Civ.P. 16(f) (sanctions for failure to obey a scheduling order include, *inter alia,* "dismissing the action or proceeding or any part thereof . . ." (quoting Fed.R.Civ.P. 37(b)(2)(C))).

In sum, we do not resolve whether summary judgment should or should not be granted to VTB. *See Amaker,* 274 F.3d at 681 n. 1 (remanding for district court to perform summary judgment analysis). Instead, we remand to the district court for entry of an order that fairly addresses the basis for its decision.

## CONCLUSION

For the foregoing reasons, we VACATE the order granting summary judgment and REMAND for the district court to reconsider the motion for summary judgment.

GERSHON, District Judge (E.D.N.Y.).

I respectfully dissent.

I have no quarrel with the majority's analysis of this Circuit's precedents with respect to the procedure to be followed when a motion for summary judgment is unopposed, nor with its analysis of the distinction between summary judgment and default judgment. Nonetheless, based upon the facts of *this* case, the judgment should be affirmed, as more akin to a default judgment than a summary judgment.

We do not know from the record whether or not, as was assumed in *Amaker v. Foley,* 274 F.3d 677 (2d Cir.2001), the district judge, in granting summary judgment, relied solely on the defendant's failure to respond to the motion. However, even if he did, I would affirm. The defendant in this case was the subject of a default judgment, until, acting through counsel, he invoked the district judge's discretion and obtained a reopening of the default. He answered the complaint, but then dismissed his attorney, who was allowed to withdraw. Defendant, proceeding *pro se,* then once again failed to respond, this time to the summary judgment motion, and judgment was entered against him. He therefore should not get the benefit of the summary judgment procedure rather than the default judgment procedure. Had defendant not moved to vacate the default judgment, or had the trial court not granted the motion, the default judgment standards, set forth in the majority opinion, would have been applicable.

Defendants should not be allowed to avoid the less stringent standards applicable to a default judgment by failing to respond to a summary judgment motion

after a default judgment is vacated. Here, by the relatively simple expedient of obtaining an order vacating the default judgment, defendant put additional burdens on a busy trial court, and significant litigation burdens on plaintiff, including conducting discovery and preparing summary judgment papers, all the while delaying permanent relief. Having failed to respond to the summary judgment motion, there is no sound reason for him to be treated other than as a defaulting defendant.

Defendant, while *pro se,* is not unsophisticated. He did not raise the issue which forms the basis for the majority's reversal, and the equities do not favor him. Even on the appeal, he has offered no grounds for concluding that either as a factual or legal matter the judgment against him was ill-founded. Under all of these circumstances, I would affirm the judgment.